IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:21-CR-061 |
| Plaintiff, | : | (Judge Thomas M. Rose) |
| v. | : | |
| WILLIAM S. HITCHINGS, V | : | DEFENDANT WILLIAM H. HITCHINGS' MOTION TO SUPPRESS STATEMENTS |
| Defendant. | : | |

Now comes the Defendant, William S. Hitchings, by and through counsel, and moves the Court for an order suppressing all statements obtained and any derivative evidence arising from statements obtained from the Defendant in the course of the investigation of this matter on or about February 9, 2021. The Defendant makes this motion pursuant to the Fifth Amendment to the United States Constitution, as well as the case law cited in the attached memorandum.

Respectfully submitted,

/s/ James P. Fleisher
James P. Fleisher (0059509)
BIESER, GREER & LANDIS, LLP
6 N. Main Street, Suite 400
Dayton, OH 45402-1908
PHONE:   (937) 250-7783
FAX:   (937) 223-6339
E-MAIL:   jpf@biesergreer.com

*Attorney for Defendant, William S. Hitchings, V*

## MEMORANDUM

On February 9, 2021, agents and officers of the Federal Bureau of Investigation ("FBI"), Troy Police Department ("TPD"), and Dayton Police Department ("DPD") executed search and arrest warrants for (1) the residence at 924 East Main Street, Troy Ohio; (2) the person of Defendant William Sidney Hitchings V ("Mr. Hitchings"); and (3) a 2011 Chevrolet Tahoe belonging to Mr. Hitchings. At approximately 6:00 a.m., agents from the FBI SWAT team forced entry into Mr. Hitchings' residence at 924 East Main Street, Troy Ohio. The agents placed Mr. Hitchings in handcuffs. While other agents and officers searched the property, TFO Jeffery Kunkleman (TPD) ("Officer Kunkleman") searched Hitchings' person. Mr. Hitchings was placed into the patrol vehicle driven by Officer Kunkleman and SA Andrea Kinzig.

Mr. Hitchings was transported to the Troy Police Department by officer Kunkleman and Agent Kinzig. Mr. Hitchings arrived at the Troy Police Department at approximately 6:24 a.m. and was brought into an interview room at 6:27 a.m. The interview room was occupied by a uniformed police officer upon Mr. Hitchings' arrival. Officer Kunkleman placed Mr. Hitchings in the interview room alone with the door closed. Mr. Hitchings remained in handcuffs. For reasons not apparent in the discovery materials, Mr. Hutchings did not have shoes on when he arrived in the interview room.

Agent Kinzig and Officer Kunkleman entered the interview room at approximately 6:32 a.m. and closed the door. There were no windows in the interview room. Agent Kinzig and Officer wore plain clothes. Agent Kinzig wore a visible firearm. Mr. Hitchings' handcuffs were removed. Agent Kinzig stated that Mr. Hitchings was not under arrest and that he did not have to answer any questions. Mr. Hitchings explicitly asked if he should get an attorney. The interrogating officers stated that it is his choice whether he wanted an attorney or not. The agents then began questioning

2

Mr. Hitchings. Approximately six (6) minutes later, Agent Kinzig stated that she would read Mr. Hitchings his rights. Mr. Hitchings said that he did not want to waive his rights. After Agent Kinzig read Mr. Hitchings his rights, Agent Kinzig handed Mr. Hitchings a standard FD395 form. Mr. Hitchings signed the form but did not read the form. Mr. Hitchings informed Agent Kinzig that he used marijuana and methamphetamine earlier that morning.

After approximately fifty (50) minutes of questioning Mr. Hitchings explicitly stated that he would not answer questions anymore and that he wanted an attorney. Mr. Hitchings then said, "please give me an attorney."

After Mr. Hitchings asked whether he was supposed to invoke his right to counsel, Officer Kunkleman told Mr. Hitchings "it's always better to cooperate." Agent Kinzig temporarily left the room before returning to continue the interrogation. Mr. Hitchings was again placed in handcuffs after becoming emotional. Agent Kinzig and Officer Kunkleman remained in the room and questioned Mr. Hitchings about his invocation and emotional outburst. When asked about his demand for an attorney, Mr. Hitchings said, "why does it matter." After approximately two additional minutes of discussion regarding his invocation, Mr. Hitchings said that he would continue without an attorney.

Agent Kinzig and Officer Kunkleman resumed the interrogation and continued for approximately three hours before taking a short break. During the short break, Mr. Hitchings was left in the room handcuffed with his hands behind his back until questioning resumed. In total, Mr. Hitchings was held in the interview room approximately six hours. Mr. Hitchings was arrested at the conclusion of the interrogation.

The right to counsel and the privilege against self-incrimination guaranteed by the Fifth Amendment of the United States Constitution prohibits the use of a defendant's statement as

3

evidence against him in the absence of a knowing, voluntary and intelligent waiver of those rights as required by *Miranda v. Arizona* (1966), 384 U.S. 346. The procedural safeguards of *Miranda* apply whenever there is a custodial interrogation. *Miranda, supra* at 444. The test used to determine whether an individual is in custody or otherwise significantly deprived of freedom for purposes of *Miranda* depends on the circumstances of each case. *Berkemer v. McCarty* (1984), 468 U.S. 420.

Further, "[l]aw enforcement officers must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during custodial interrogation." *Davis v. United States*, 512 U.S. 452, 454 (1994). Invoking the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). Once a suspect indicates a desire to deal with police only through counsel, a suspect cannot be subject to further interrogation. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). This rule is intended to "prevent police from badgering a defendant into waiving his previously asserted Miranda rights." *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

Mr. Hitchings also challenges the voluntariness of the admissions made during the interrogation. Before a confession is admissible, it "must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Bram v. United States*, 168 U.S. 532, 542-43, 18 S. Ct. 183, 42 L. Ed. 568 (1897) (internal quotation and citation omitted); *see also Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986) (holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment"). An admission is

4

deemed to be coerced where the conduct of law enforcement officials was such as to overbear the accused's will to resist, thus bringing about a confession not freely self-determined. *Beckwith v. United States*, 425 U.S. 341, 347-48, 96 S. Ct. 1612, 48 L. Ed. 2d 1 (1976) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961)). The ultimate question in coerced confession cases is whether the confession was voluntary, or in other words, "the product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).

In determining whether a statement by a suspect is voluntary, the Court must consider "'whether a defendant's will was overborne by the circumstances surrounding the giving of a [statement].'" *Dickerson v. United States*, 530 U.S. 428, 434, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000) (quoting *Schneckloth*, 412 U.S. at 226). Courts must consider the totality of the circumstances in determining the voluntariness of coerced statements, including: (1) whether there was police coercion; (2) the length of the interrogation; (3) the location of the interrogation; (4) the continuity of the interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and, (8) whether the suspect was advised of his or her Miranda rights. *Withrow v. Williams*, 507 U.S. 680, 693-94, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993).

In this instance, Mr. Hitchings, under the influence of marijuana and methamphetamine, was taken from his home, handcuffed, in the back of a police vehicle and taken to the Troy Police department for a six-hour interrogation. Mr. Hitchings invoked his right to counsel at the commencement of the interrogation, but the interrogating officers failed to immediately cease questioning. Mr. Hitchings unequivocally invoked his right to counsel after approximately fifty

5

(50) minutes of questioning. Again, the interrogating officers failed to immediately cease questioning.

The Defendant respectfully requests that the Court conduct an evidentiary hearing to permit the parties to elicit testimony and present documentary evidence that will enable the Court to determine whether a violation of the Defendant's Fifth Amendment rights against self-incrimination has occurred. The Defendant asserts that he was not properly Mirandized, he invoked his right to counsel on multiple occasions and questioning did not immediately cease, his statements were not voluntary, and all statements made by him which the Government seeks to introduce should be suppressed, as any and all such statements were obtained in violation of his right to counsel and protection against self-incrimination and were not the result of a knowing, intelligent and voluntary waiver of his rights. The Defendant also seeks the suppression of any derivative evidence determined to be "fruit of the poisonous tree."

Respectfully submitted,

/s/ James P. Fleisher
James P. Fleisher (0059509)
BIESER, GREER & LANDIS, LLP
6 N. Main Street, Suite 400
Dayton, OH 45402-1908
PHONE: (937) 250-7783
FAX: (937) 223-6339
E-MAIL: jpf@biesergreer.com

*Attorney for Defendant William S. Hitchings, V*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of September, 2021, I electronically filed the foregoing document with the Clerk of Court of the United States District Court for the Southern District of Ohio using the CM/ECF system which will send notification to all parties of record.

/s/ James P. Fleisher
JAMES P. FLEISHER

2900.221028/ 867949.1