```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF OHIO
 2                    WESTERN DIVISION AT DAYTON
                             -  -  -
 3   UNITED STATES OF AMERICA,      :CASE NO. 3:21-CR-061-TMR-1
                                    :
 4              Plaintiff,          :
          vs.                       :CHANGE OF PLEA
 5                                  :
     WILLIAM SIDNEY HITCHINGS, V,   :MONDAY, JULY 11, 2022
 6                                  :1:30 P.M.
                Defendant.          :
 7                                  :
                                    :
 8                           -  -  -
                     TRANSCRIPT OF PROCEEDINGS
 9            BEFORE THE HONORABLE THOMAS M. ROSE,
             UNITED STATES DISTRICT JUDGE, PRESIDING
10                           -  -  -

11   APPEARANCES:
     For the Plaintiff:
12                         NICHOLAS DINGELDEIN, ESQ.
                           U.S. Attorney's Office
13                         200 W. Second Street
                           Suite 600
14                         Dayton, OH  45402

15   For the Defendant:
                           JAMES P. FLEISHER, ESQ.
16                         Bieser, Greer & Landis
                           6 North Main Street
17                         400 National City Center
                           Dayton, OH  45402
18
     Also Present:  William Hitchings, Defendant
19
     Courtroom Deputy:  Elizabeth Penski
20
     Stenographer:      Mary Schweinhagen, RPR, RMR, RDR, CRR
21                      United States District Court
                        200 West Second Street, Room 910
22                      Dayton, Ohio 45402

23      Proceedings reported by mechanical stenography,
     transcript produced by computer.
24                         *** *** *** ***

25
```

```
 1              P-R-O-C-E-E-D-I-N-G-S                    1:41 P.M.

 2              THE COURT:  We're before the Court this afternoon in

 3    the matter of the United States of America versus William

 4    Sidney Hitchings, V, Case Number 3-21-cr-61.  And we're here

 5    for the purposes of sentencing -- I'm sorry -- we're here for

 6    the purposes of considering a plea from Mr. Hitchings to Count

 7    3 of a superseding indictment which charges him with receipt

 8    of child pornography, a violation of 18, United States Code,

 9    18, U.S.C., 2252(a)(2) and (b)(1).

10         Would counsel enter their appearance for the record.

11              MR. DINGELDEIN:  Nick Dingeldein for the United

12    States standing in for AUSA Christina Mahy.

13              MR. FLEISHER:  Good afternoon, Your Honor.  Jim

14    Fleisher here on behalf of the defendant, Mr. Hitchings.

15              THE COURT:  As I indicated, we are here for the

16    purposes to consider Mr. Hitchings's plea.

17         Mr. Dingeldein, the Court has correctly described the

18    charge to which Mr. Hitchings will be pleading?

19              MR. DINGELDEIN:  That's correct, Your Honor.

20              THE COURT:  And, Mr. Fleisher, Mr. Hitchings does

21    understand the charge and is ready to go forward?

22              MR. FLEISHER:  Yes, Your Honor, he is.

23              THE COURT:  How about that, Mr. Hitchings?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  Mr. Hitchings, in order for me to
```

1    consider a plea, I do need to ask you a number of questions.

2    I need to ask you those questions while you are under oath.

3    Now, the oath is simply the same oath I give to any witness or

4    defendant in this court, and it assures the Court that your

5    answers to my inquiries are truthful and complete.

6        I do need to also tell you that once you are placed under

7    oath you could be prosecuted for perjury or false swearing if

8    any of your responses were not truthful.  Do you understand?

9            THE DEFENDANT:  Yes, Your Honor.

10           THE COURT:  Understanding that, do you still wish to

11   go forward with your plea?

12           THE DEFENDANT:  I do.

13           THE COURT:  All right.  What I am going to ask you

14   to do, Mr. Hitchings, is move that microphone a little closer

15   to you, speak up clearly so I can hear all your responses.

16       Would you please raise your right hand to the best of

17   your ability.

18       (Defendant sworn.)

19           THE COURT:  Why don't we start, if we could,

20   Mr. Hitchings, can you share with the record your full name?

21           THE DEFENDANT:  William Sidney Hitchings, V.

22           THE COURT:  And, Mr. Hitchings, how old are you?

23           THE DEFENDANT:  I'm 36.

24           THE COURT:  Can you tell me the year you were born?

25           THE DEFENDANT:  1986.

1          THE COURT:  Let's talk briefly about your education.

2     How far did you go in school?

3          THE DEFENDANT:  High school.

4          THE COURT:  And where'd you graduate from high

5     school?

6          THE DEFENDANT:  Springfield High School in

7     Montgomery County, Pennsylvania.

8          THE COURT:  All right.  And after high school, did

9     you pursue any other educational endeavors, vocational,

10    technical, college, anything like that?

11         THE DEFENDANT:  Technical, vocational

12    certifications.

13         THE COURT:  Well, let me ask you this:  Do you have

14    any difficulty whatsoever in reading, writing, or

15    understanding the English language?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  Have you been able to understand

18    everything that you and Mr. Fleisher have talked about with

19    regard to your case, the charge against you, the facts that

20    are being alleged, the processes and the procedures that

21    you'll be going through?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Now, during those discussions -- and it

24    would be normal -- if you had questions or concerns about

25    anything, if you asked questions, expressed your concerns to

1   Mr. Fleisher, was he able to answer your questions and address

2   your concerns?

3           THE DEFENDANT:  He was.

4           THE COURT:  All right.  Are you comfortable, then,

5   that you fully understand everything that you and Mr. Fleisher

6   have discussed about this case up to this point in time?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  Now, part of those discussions included

9   a review of certain documents.  The one document that I'll

10  refer to first is the superseding indictment.  Now, that's the

11  charging document.  And within that charging document, there

12  were a number of counts, but we're specifically focusing on

13  Count 3 of the superseding indictment.

14      Did you, with his assistance, carefully read over that

15  superseding indictment, and specifically Count 3?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you believe after that review and

18  reading over that count within that charging document that you

19  fully understand the charge to which you are pleading here

20  today?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  In addition to the charging document,

23  Mr. Fleisher also reviewed with you another document.  That

24  other document is entitled "Attachment A," and that's a

25  document that would be attached to the plea agreement upon

1    which you are basing your plea and lays out or states the

2    facts that are being alleged by the government underlying the

3    charge in the charging document.  And that attachment is

4    just -- it's basically two pages, of course, with page 3 the

5    signature lines.

6         Did you, with Mr. Fleisher's assistance, carefully read

7    over and review Attachment A, the statement of facts?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Do you believe after reading over that

10   statement of facts, Attachment A, you fully understand all the

11   facts that are being alleged against you underlying the charge

12   to which you are pleading?

13             THE DEFENDANT:  I do.

14             THE COURT:  If you had any questions about those

15   facts, any concerns about those facts, were you able to ask

16   your questions, express your concerns, and was Mr. Fleisher

17   able to answer those questions and address those concerns?

18             THE DEFENDANT:  Yes, he was, and I am.

19             THE COURT:  Excuse me?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Okay.  Are those the facts, then -- are

22   you comfortable, then, that you fully understand the facts?

23             THE DEFENDANT:  I do.

24             THE COURT:  And those are the facts to which you

25   wish to enter a plea of guilty to?

1          THE DEFENDANT:  They are.

2          THE COURT:  What I want to do is, as we do with all

3     pleas, I am going to have the Assistant U.S. Attorney read on

4     to the record that factual statement contained within

5     Attachment A.  If you have a copy of that attachment, you may

6     follow along.  Listen carefully as he reads.  Then once he's

7     done reading, I am simply going to ask you:  Did you

8     understand what he read; do you have any questions about what

9     he read; are those the facts to which you wish to enter a plea

10    of guilty to; and then my final question will be, are you

11    entering a plea of guilty to those facts because they are

12    true.

13       Do you understand how we're going to proceed?

14          THE DEFENDANT:  I do.

15          THE COURT:  Mr. Dingeldein.

16          MR. DINGELDEIN:  Your Honor, Attachment A to the

17    plea agreement reads as follows:

18       Statement of facts.  The United States and defendant

19    William Sidney Hitchings, V, stipulate and agree that if this

20    case proceeded to trial the United States would prove the

21    facts set forth below beyond a reasonable doubt.  They further

22    stipulate and agree that these are not all of the facts that

23    the United States would prove if this case had proceeded to

24    trial.

25       On or about December 14, 2020, in the Southern District

1    of Ohio, William Sidney Hitchings, V -- Hitchings -- knowingly

2    received any visual depiction using any means or facility of

3    interstate or foreign commerce that had been mailed, shipped,

4    transported in or affecting interstate or foreign commerce by

5    any means, including by computer, and the production of such

6    visual depiction involved the use of a minor engaging in

7    sexually explicit conduct and the visual depiction was of such

8    conduct.

9           On February 9, 2021, a search warrant authorized by the

10   United States District Court for the Southern District of Ohio

11   was executed at Hitchings's residence.  Law enforcement

12   recovered a loaded Ruger P89DC 9-millimeter handgun loaded

13   with a magazine containing approximately 15 rounds of

14   9-millimeter ammunition in the basement of the residence.

15   Hitchings had been the user of this firearm since

16   approximately 2010.  Also recovered from the residence during

17   the search warrant were two small quantities of

18   methamphetamine and various drug paraphernalia.

19          At the time of the execution of the search warrant,

20   February 9, 2021, Hitchings was an unlawful user of a

21   controlled substance, to wit, methamphetamine, which he used

22   multiple times a day for approximately the past six years; and

23   marijuana, which he used on a daily basis for years.

24   Hitchings possessed the Ruger P89DC 9-millimeter handgun while

25   using and under the influence of methamphetamine and

marijuana.

Hitchings admitted to law enforcement officers that he had been viewing child pornography since childhood. He primarily traded child pornography files with others via the Telegram, Kik, and Omegle messenger applications, three Internet-Based messenger applications available on smart-phones, tablets, and/or computers. He received many of the files from others via links to their Dropbox or Mega cloud storage accounts, two Internet-based cloud accounts. Hitchings had been given at least one other individual -- sorry. Scratch that, Your Honor. Hitchings had given at least one other individual a hard drive containing numerous child pornography files. Hitchings estimated that he currently had hundreds of thousands of child pornography files in his current collection.

Hitchings utilized numerous electronic devices to view, trade, and store his child pornography files, including but not limited to two Lenovo Thinkpad computers, an HP Pavilion 21 Touchsmart All-in-One computer, a Motorola MotoZ3 cellular telephone, and a number of external hard drives, portable hard drives, thumb drives, and SD cards. Hitchings also maintained child pornography files in his Google Drive and Google Photos accounts associated with the email address w.hitchings@gmail.com and his Verizon Cloud account associated with the telephone number 937-554-7700.

1    In total, Hitchings possessed, received, and/or

2    distributed more than 139,000 child pornography files across

3    the various devices and accounts.  By way of example, four of

4    the files are described as follows:

5    Number one, "VID-20160720-WA0007.3gp."  The file is a

6    video -- is a video with two screens, both of which depict

7    what appears to be two nude prepubescent male children, four

8    male children in total.  In both screens, one of the male

9    children is performing fellatio on the other male child.  In

10   one of the screens, one of the male children appears to lick

11   the anus of the other male child.  The video is approximately

12   one minute in duration.  Hitchings received this file on or

13   around December 14, 2020, onto his Lenovo ThinkPad laptop

14   after downloading it from a Mega cloud storage account.

15   Number 2, "(pedo boy) Toddler.avi."  The file is a video

16   that depicts what appears to be a white toddler-aged male

17   child lying on the bed with a pillow over his face.  What

18   appears to be an adult white male removed the toddler's

19   diaper.  The adult male then fondles the toddler's penis,

20   digitally penetrates the toddler's anus, and had anal sexual

21   intercourse with the child.  The video is approximately one

22   minute and 59 seconds in duration.  The video was recovered

23   from a Western Digital SATA drive that was contained in the

24   eight-bay external hard drive enclosure that was attached to

25   Hitchings's Lenovo Thinkpad laptop.

1      Number 3, "Baby Boy Fucked by 17 yo Brother.mpg."  The

2  file is a video that depicts what appears to be a nude white

3  male and a white toddler-aged male child who is wearing a

4  shirt but is nude from the waist down.  The white male puts

5  what appears to be a lubricant on the toddler's anus and

6  digitally penetrates the child's anus.  The white male then

7  puts the lubricant on his penis and has anal sexual

8  intercourse with the child.  The video is approximately 8

9  minutes and 41 seconds in duration.  The video was recovered

10  from the Motorola cellular telephone.

11      Number 4, "Felixxx_134931EdF_koz.jpg."  The file is an

12  image that depicts what appears to be a nude toddler-aged male

13  child.  The child's legs are straddled, exposing his nude

14  genitals and anus to the camera.  It appears that the child's

15  legs are bound to his arms with black tape.  What appears to

16  be an adult white male, whose face is not captured in the

17  image, is pointing his penis towards, or possibly touching his

18  penis to, the child's leg and penis.  The file was saved in

19  Hitchings's Google Photos account associated with the email

20  address w.hitchings@gmail.com as well as the Western Digital

21  SATA drive that was contained in the eight-bay external hard

22  drive enclosure that was attached to Hitchings's Lenovo

23  Thinkpad laptop and another silver USB device.

24      All of the child pornography files were viewed,

25  possessed, received, and distributed while Hitchings was

1  located in the Southern District of Ohio.  Accessing Kik,

2  Telegram, and Omegle messenger applications and Google Drive,

3  Google Photos, Mega, Dropbox, and Verizon cloud accounts

4  required the use of the Internet and thereby affects

5  interstate or foreign commerce.

6      For the information of the Court, Ruger P89DC

7  9-millimeter handguns are not manufactured in the state of

8  Ohio.  Hitchings's possession of this firearm in the Southern

9  District of Ohio therefore required that the firearm traveled

10  in interstate commerce.

11      Your Honor, the statement of facts or the attachment is

12  signed by Mr. Hitchings and Mr. Fleisher acknowledging that

13  they have read and reviewed the statement.

14      THE COURT:  All right.  Thank you, counsel.

15      Mr. Hitchings, did you understand what counsel has read

16  onto the record from Attachment A.

17      THE DEFENDANT:  Yes, Your Honor.

18      THE COURT:  Do you have any questions about anything

19  that was read?

20      THE DEFENDANT:  No, Your Honor.

21      THE COURT:  Are those the facts contained in the

22  attachment to which you wish to enter a plea of guilty to?

23      THE DEFENDANT:  Yes, Your Honor.

24      THE COURT:  And is that because those facts are

25  true?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  What I'm going to ask then, if it's not

3    already been accomplished -- it sounds like it may have been,

4    but if it has not already been accomplished -- I would ask

5    that Mr. Hitchings, as well as Mr. Fleisher, sign the

6    statement of facts.  And then I would ask that Mr. Hitchings,

7    Mr. Fleisher, and Mr. Dingeldein or Ms. Mahy, if that was the

8    case, initial the bottom of each of the pages.  Has that been

9    accomplished?

10          MR. DINGELDEIN:  That's been accomplished, Your

11   Honor.

12          THE COURT:  Mr. Hitchings, it's not only important

13   that you fully understand the charge to which you are pleading

14   and the facts that are being alleged, it's also important that

15   you understand what can happen if you enter a plea of guilty

16   to this charge and the Court makes a finding of guilty.

17          So what we're going to do is talk a little bit -- well,

18   we're going to talk about, one, the maximum penalties that the

19   Court could impose upon an individual for a violation of this

20   section of law.  Then we're going to talk how the Court -- or

21   what the Court considers once it has those parameters, how the

22   Court considers what is an appropriate sentence within those

23   parameters, what is a sentence that meets the goals of

24   sentencing but is not more than is necessary.

25          And then, finally, we're going to talk about an area that

1    is specific to your case, your plea, and that is that you are

2    entering this plea pursuant to a plea agreement, and within

3    that plea agreement, there is a provision under 11(c)(1)(C) of

4    the Federal Rules of Criminal Procedure which allows a

5    defendant and the government to agree upon and propose to the

6    Court what they believe an appropriate disposition would be.

7    So we're going to talk about how that provision works, how it

8    will be working in your case, and what are the terms of your

9    provision.

10         Do you understand what we're going to talk about?

11              THE DEFENDANT:  I do, Your Honor.

12              THE COURT:  Well, let's talk about those maximum

13   penalties.  And because I'm going to review maximum penalties

14   with you, that doesn't mean I am going to impose maximum

15   penalties, but what it means is those are the parameters,

16   those are the outside boundaries.  And within those boundaries

17   is the area in which the Court will exercise its discretion in

18   coming up with a disposition that does meet the goals of

19   sentencing but is not more than necessary.

20         You understand that for a violation of this section of

21   law, for a violation of the charge in Count 3, the Court may

22   impose a term of imprisonment, but not less than five years,

23   but not more than 20 years.  So five years is a mandatory

24   minimum that the Court must impose, and the maximum is 20

25   years.  Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And you understand that after any term

3    of incarceration, whatever that may be, there is a term of

4    supervision.  And for a violation of this section of law, the

5    supervision is a term, again, of at least five years.

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  But could be up to life.  Do you

8    understand that?

9          THE DEFENDANT:  I do.

10         THE COURT:  The Court also has the ability to impose

11   a fine.  I don't have to impose a fine but I can.  If I

12   impose a fine, I could fine an individual up to $250,000.  Do

13   you understand?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Now, as opposed to the discretion which

16   I can exercise in determining whether or not to impose a fine,

17   there is a mandatory restitution and a mandatory special

18   assessment.  The mandatory restitution is pursuant to 18,

19   U.S.C., 2259, which is not less than $3,000 per victim.  Do

20   you understand?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  The Court also has -- there is also a

23   special assessment -- there is also an assessment pursuant to

24   18, U.S.C., 2259(a) not to exceed $35,000.  Do you understand?

25         THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  There is also an assessment pursuant to

2    18, U.S.C., 3014 of $5,000 on any nonindigent person or

3    entity.  Do you understand?

4    THE DEFENDANT:  Yes, Your Honor.

5    THE COURT:  And, finally, there is a special

6    assessment under 18, U.S.C., 3013 of $100 per each count of

7    conviction.  You are pleading to one count; so, obviously,

8    that, the mandatory special assessment pursuant to that

9    section would be $100, and you understand that?

10   THE DEFENDANT:  Yes, Your Honor.

11   THE COURT:  Now, the Court also has the ability to

12   order forfeiture of any materials, properties, monies that

13   might be involved in the offense, and do you understand that?

14   THE DEFENDANT:  Yes, Your Honor.

15   THE COURT:  Do you have any questions about any of

16   those maximums, mandatory minimums, or sanctions?

17   THE DEFENDANT:  No, Your Honor.

18   THE COURT:  All right.  So those are the parameters

19   then, Mr. Hitchings.  We've got a mandatory minimum of five

20   years, and I have a maximum of 20 years; so within those two

21   parameters, the Court must determine what is an appropriate

22   disposition, what's a disposition that meets the goals of

23   sentencing but is not more than is necessary.

24   Well, in order to do that, I consider a number of

25   different factors.  One is I consider the nature and

1    circumstance of the offense.  That simply means I try to find

2    out exactly what happened, get a clear picture.  I also look

3    to see who that individual is, his history, his

4    characteristics, his background.  Because what happened and

5    who the individual is is what makes up a clear picture for the

6    Court.

7         Once I have that clear picture, then I do -- what I do is

8    I look to other individuals, other situations that are

9    somewhat similar, maybe a violation of this section of law

10   with an individual who has a similar history, characteristics,

11   and background.  All cases are different.  All cases are

12   distinguishable.  However, there is a commonality with many

13   cases, and it is important, to the extent possible, the Court

14   keeps its sentencing as consistent as possible.

15        The Court also then, once I have -- once I have looked at

16   that, then the Court will look to see what is a sentence then

17   within those parameters of sentencing, what's a sentencing

18   that is sufficient with regard to this individual, with regard

19   to this factual situation, this violation, what is necessary

20   to reflect the seriousness of this offense and promote respect

21   for the law and provide a just punishment?

22        I start out with a rebuttable presumption, which I am

23   going to look to you and Mr. Fleisher to talk to me about as

24   we go towards disposition.  But I start out with a presumption

25   that an individual who violates the law, one, doesn't

1    appreciate what he -- doesn't appreciate the seriousness of

2    what he or she has done and they definitely don't respect the

3    law.  I need to know where that individual is as we approach

4    disposition:  Has that individual gained an appreciation for

5    the seriousness of what has occurred?  Has that individual

6    gained respect for the law?  A tough way to get there, but has

7    he or she?

8         And that's important because in imposing a just sentence,

9    Mr. Hitchings, and determining what do I need to do, what do I

10   need to impose upon this individual to deter him or her from

11   further criminal conduct?  What do I need to impose upon this

12   individual to protect the public from him or her?  So you can

13   see an individual who's gained some appreciation for the

14   seriousness of what he or she has done, has gained respect for

15   the law may be of less of a concern to me when I have to

16   determine what exactly am I going to have to impose upon this

17   individual to deter him or her, to protect the public from him

18   or her.  Do you understand?

19             THE DEFENDANT:  I do, Your Honor.

20             THE COURT:  Then I look at another factor, a factor

21   under the United States Sentencing Guidelines, advisory

22   guideline calculation.  In every case I look at this factor.

23   There is always a score, raw score for an offense.  That score

24   can be raised or lowered.  But it results in what we call an

25   offense level.  And then I look at an individual, the

1    defendant, I look and see what his or her criminal history

2    was, or lack of criminal history.  And I take that criminal

3    history, and it becomes a criminal history category.  I take

4    those two numbers and I go to a chart.  It simply comes up

5    with so many months to so many months.

6        Now, of course like we've talked about, you are dealing

7    with a mandatory minimum here.  But the advisory guideline

8    range is a factor that the Court does consider.

9        Let me give you an example.  Let's say this was a theft

10   offense.  There is a score for that offense.  But due to the

11   amount of money or property, whatever was taken, that score

12   could raise.  It's not good to raise a score, but if that

13   individual does demonstrate an acceptance of responsibility

14   for what he or she has done, has timely notified the

15   authorities of his or her intention to plead, that can lower

16   the score.  But it results in what I said, an offense level.

17       Then I look at the individual's criminal history, lack of

18   criminal history.  That creates that criminal history

19   category.  I simply go to the chart, and that comes up with so

20   many months to so many months within the parameters that I've

21   just described.

22       Mr. Fleisher, have you had an opportunity to talk to

23   Mr. Hitchings about the guideline calculation, any estimates

24   that you may have made, and the resulting advisory range?

25            MR. FLEISHER:  Yes, Your Honor, I have.

1        THE COURT: Could you just share with the record a

2    summary of that. And if you would, include any of those

3    estimates that you may have made. I ask you that question,

4    Mr. Fleisher, understanding, one, there is this mandatory

5    minimum, but I also ask it understanding that there is an

6    11(c)(1)(C) here too.

7        MR. FLEISHER: Certainly, Your Honor. Yes, Your

8    Honor. I have had an opportunity to discuss with

9    Mr. Hitchings the applicability of the guidelines in this

10   case, the fact that those guidelines are advisory in nature,

11   but also that they are one of the factors that the Court must

12   consider in its analysis under 18, United States Code, Section

13   3553(a).

14       In discussing the guidelines with him, Your Honor, all of

15   the offense level calculations derive from Section 2G2.2 of

16   the guidelines. I had advised him that for this particular

17   offense, which is receipt of child pornography, the guidelines

18   assign a base offense level of 22. There is a 2-point

19   enhancement under Section 2G2.2 for any photographs where

20   there was an individual under the age of 12. There is also a

21   2-point enhancement for distribution in this case. There

22   was -- apparently, Mr. Hitchings had passed along a few

23   photographs to an individual. There is a 4-point enhancement

24   for the photographs or videos containing sadistic or

25   masochistic conduct. There is also a 2-point enhancement for

1    use of a computer in association with this offense, another

2    5-point enhancement because there were more than 600 images

3    that were possessed.

4         And, finally, Your Honor, I discussed with him, as the

5    Court has already discussed, how his acceptance of

6    responsibility and timely notification of his intent to plead

7    in this case could result in a 3-point reduction from that

8    offense level.  Assuming that 3-point reduction is granted by

9    the Court, Mr. Hitchings's adjusted offense level is 34.

10        His criminal history category is I, and that would result

11   in an advisory sentencing guidelines range of 151 to 188

12   months, which converts to 12 years, 7 months to 15 years and 8

13   months.

14             THE COURT:  Mr. Fleisher, did Mr. Hitchings appear

15   to understand your explanation of the guidelines and how they

16   work?

17             MR. FLEISHER:  Yes, sir, he did.

18             THE COURT:  And if he had any questions about your

19   explanation, you believe you were able to answer and address

20   them?

21             MR. FLEISHER:  Yes, Your Honor.

22             THE COURT:  And he understands that -- do you

23   believe he understands that the estimates that you have made

24   based upon your experience are indeed only that, estimates

25   that cannot be guaranteed?

1          MR. FLEISHER:  Yes, Your Honor, he understands.

2          THE COURT:  How about that, Mr. Hitchings, did you

3     understand Mr. Fleisher's explanation of the guideline

4     calculation, how it works, and how it may affect your

5     disposition?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Now, I would indicate that Mr. Fleisher

8     does this a lot.  He's in my court a lot.  He represents a lot

9     of different people, a lot of different types of offenses, and

10    he does this calculation over and over again.

11        When you do something that frequent, you acquire a degree

12    of expertise, and Mr. Fleisher is definitely an expert in

13    these calculations.  However, as expert as he may be, you

14    understand that those estimates that he made are based upon

15    his analysis and his -- they are his estimates, and that's all

16    they are; they are just estimates at this point in time.  Do

17    you understand that?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  These are not guarantees.  That's no

20    deficiency on the part of Mr. Fleisher.  It's just the fact

21    that I am going to make the final decision based upon

22    everything that is presented to me.  Do you understand?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Do you have any questions about that?

25         THE DEFENDANT:  No, Your Honor.

1      THE COURT:  There are several other factors along

2  with those factors that we have discussed that the Court

3  considers.  The Court also looks to see whether an individual

4  is in need of any type of educational or vocational training.

5  Is there any medical concerns of this individual?  Is there

6  any need for a correctional treatment of some type?

7      Because the Court also tries to provide -- not only

8  impose the sanction but also tries to provide whatever would

9  be appropriate, whatever would be of assistance to that

10  individual in dealing with any issues that he or she may have,

11  moving that individual or preparing that individual for when

12  the sanction is over that they can move more easily back into

13  the community, receiving whatever type of treatment, receiving

14  whatever type of training that can be provided to them.  And

15  you understand that?

16      THE DEFENDANT:  I do, Your Honor.

17      THE COURT:  All right.  Do you have any questions,

18  then, about the factors of sentencing that the Court is

19  considering to come up with a sentence that, one, meets the

20  goals of sentencing but not more than necessary?

21      THE DEFENDANT:  I understand, yes, Your Honor.

22      THE COURT:  All right.  Well, then, let's talk about

23  the last area of disposition, and that's your 11(c)(1)(C)

24  provision which is contained within your plea agreement.

25      Give me just a second.

1    Your 11(c)(1)(C) provision -- and we'll be going over

2    your plea agreement here in just a few moments -- is contained

3    in Provision 6 of your plea agreement.  Now, an 11(c)(1)(C)

4    provision under the United States Sentencing Guidelines -- or

5    under the Federal Rules of Criminal Procedure allows you and

6    the government to agree upon what you and the government

7    believe is an appropriate disposition and then propose that to

8    the Court.  The Court will be considering all the factors of

9    sentencing and determining whether or not the Court agrees

10   that the 11(c)(1)(C) provision, the agreed-upon sentence, is a

11   sentence that does meet those goals but is not more than

12   necessary.

13   Now, that sentence can either be a specific sentence or

14   it can be a range within which the Court would determine what

15   an appropriate sentence is.  If the Court accepts the plea

16   agreement and the 11(c)(1)(C) provision, the Court would

17   sentence in accordance with that.

18   Now, if for some reason after considering the factors of

19   sentencing the Court cannot accept your 11(c)(1)(C), I would

20   afford you the opportunity, Mr. Hitchings, to withdraw your

21   plea.  Is that your understanding of how the 11(c)(1)(C)

22   works?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  All right.  Your 11(c)(1)(C) indicates

25   that you and the government have agreed that an appropriate

1  disposition in this case is a term of incarceration not to --

2  not to exceed 136 months.  So what that means to me is you and

3  the government are proposing to the Court that a term of

4  imprisonment of within the range of, since you are now

5  incarcerated, a time served up to 136 months is an appropriate

6  disposition.

7  　　　　Now, however, you do understand that there is a five-year

8  mandatory minimum here?

9  　　　　　　　THE DEFENDANT:  I do.

10 　　　　　　　THE COURT:  So that's 60 months.  So it is not time

11 served up to 136 months, it's 60 months up to 136 months.  Do

12 you understand that?

13 　　　　　　　THE DEFENDANT:  Yes, Your Honor.

14 　　　　　　　THE COURT:  Do you have any questions about that?

15 　　　　　　　THE DEFENDANT:  No, Your Honor.

16 　　　　　　　THE COURT:  I correctly interpret that, don't I,

17 Mr. Dingeldein?

18 　　　　　　　MR. DINGELDEIN:  Yes, Your Honor.

19 　　　　　　　THE COURT:  Mr. Fleisher?

20 　　　　　　　MR. FLEISHER:  Yes, Your Honor.

21 　　　　　　　THE COURT:  After that term of incarceration, within

22 that range of 60 to 136 months, there is a term of supervised

23 release.  And, of course, that will be determined solely by

24 the Court.  The conditions, of course within the parameters of

25 the statute, that five-year mandatory, but the Court will

1    consider what conditions, discretionary or mandatory, must be

2    imposed.

3         The Court also will impose as an assessment pursuant to

4    18, U.S.C., 2259(a) any fine that is determined by the Court

5    to be appropriate.

6         There is also a provision in your 11(c)(1)(C) which

7    indicates that restitution as determined by the Court pursuant

8    to the agreement contained in paragraphs 2 through 7 of this

9    plea agreement, you specifically agree that although you are

10   not pleading guilty to Counts 1, 4, and 5 of the superseding

11   indictment, as part of the agreement you are consenting and

12   agreeing that you are fully liable for restitution to the

13   victims of these crimes as described in Counts 1, 4, and 5 as

14   if you had pled guilty of those offenses, and that you will

15   pay restitution to any victims of those crimes as laid out in

16   paragraph 7 of the plea agreement.  And that in paragraph 7 it

17   is laid out specifically what that would be.  Do you

18   understand that?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  Do you have any questions about that?

21              THE DEFENDANT:  No, Your Honor.

22              THE COURT:  You also are agreeing to abandon the

23   handgun, the Ruger P89DC 9-millimeter handgun, and you will

24   sign an abandonment form and allow the authorities to retain

25   possession of that.  Is that your understanding?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  Then, finally, there is a -- there is

3   the mandatory special assessment that applies in all cases for

4   counts of conviction of $100 that must be paid.  Do you

5   understand that?

6        THE DEFENDANT:  Yes, Your Honor.

7        THE COURT:  Do you have any questions -- now, this

8   11(c)(1)(C) is a little more complicated than many

9   11(c)(1)(C)s.  Do you understand it?

10       THE DEFENDANT:  I do, Your Honor.

11       THE COURT:  And you have reviewed it, and you have

12  discussed it with Mr. Fleisher, and if you had questions about

13  what exactly those provisions mean, you fully understand the

14  ramifications of this plea agreement and the terms of your

15  11(c)(1)(C); is that correct?

16       THE DEFENDANT:  Yes, Your Honor.

17       THE COURT:  All right.  Mr. Dingeldein, is there

18  anything further that the Court needs to review with regard to

19  disposition?  I am going to go into the reporting

20  requirements, but other than that.

21       MR. DINGELDEIN:  I'm sorry if I missed it, Your

22  Honor, but the forfeiture of the electronic devices?

23       THE COURT:  Well, that's not part of the

24  11(c)(1)(C), right?

25       MR. DINGELDEIN:  No, no.

1          THE COURT:  We will review that when we go through

2     the plea agreement.

3          MR. DINGELDEIN:  Then nothing further.  My

4     apologies.

5          THE COURT:  Mr. Fleisher, anything?

6          MR. FLEISHER:  No, sir.

7          THE COURT:  Mr. Hitchings, a few more areas that we

8     need to cover.

9       You understand you don't have to enter this plea of

10    guilty.  You can continue to plead not guilty and go to trial.

11    We'd place the burden on the government to prove your guilt

12    beyond a reasonable doubt, each and every element of the

13    charge or charges.  It's the highest burden in the law.  It's

14    their burden.  You don't have a burden.  You don't have to

15    prove, say, or do anything.  You can remain at counsel table,

16    do nothing, say nothing.  That cannot be held against you.

17       Of course, Mr. Fleisher could fully participate in the

18    trial.  He could view the government's evidence, cross-examine

19    all their witnesses, call witnesses on your behalf if he felt

20    that appropriate.  If those people were hesitant to come in

21    here, I would compel them to at least attend.  He would argue

22    your case to the jury.  And if that jury, after exercising all

23    those rights, after exercising that process, returned a

24    verdict or verdicts against you, guilty verdicts, you'd have a

25    right to appeal that to the Court of Appeals.

1     Now, that process and all those rights are yours. No one

2 else's. No one can take them from you. The government can't;

3 I can't. No one can. But you can give them up by entering

4 this plea to Count 3 of this superseding indictment knowingly,

5 voluntarily, and intelligently. Do you understand that?

6     THE DEFENDANT: I do, Your Honor.

7     THE COURT: Understanding that, do you still wish to

8 go forward with your plea?

9     THE DEFENDANT: Yes, Your Honor.

10     THE COURT: Now, you are doing this -- and we made

11 reference to it several times -- you are doing this pursuant

12 to a plea agreement and, of course, the attached statement of

13 facts that are attached -- will be attached to the plea

14 agreement.

15     Your plea agreement, a copy of which I have here in front

16 of me, is nine pages long. It has 17 provisions. Have you,

17 with the assistance of Mr. Fleisher carefully read over,

18 reviewing each of those provisions in that plea agreement?

19     THE DEFENDANT: Yes, Your Honor.

20     THE COURT: In your review, if you had any

21 questions, any concerns about any one of those provisions or

22 the plea agreement itself, have you been able to ask your

23 questions, express your concerns, and has he been able to

24 answer them and address your concerns?

25     THE DEFENDANT: Yes, Your Honor.

1        THE COURT:  At this point in time, do you believe,

2   then, that you fully understand the plea agreement?

3        THE DEFENDANT:  I do, Your Honor.

4        THE COURT:  All right.  Now, we're not going to read

5   the entire plea agreement.  I am just going to -- I need to

6   point out a few provisions.  It may be a little redundant, but

7   I just want to make sure of your understanding.

8     Provision 1 talks about the charge to which you are

9   pleading.  We have talked about the charge to which you are

10  pleading at length.  You have indicated that you understand it

11  and your questions have been asked and answered; is that

12  correct?

13       THE DEFENDANT:  Yes, Your Honor.

14       THE COURT:  The penalties in Provision 2 in your

15  plea agreement are the penalties that we have discussed here

16  upon the record.  There are a number of different penalties.

17  There is a mandatory minimum.  There is a mandatory minimum in

18  both the term of incarceration and supervision.  There is

19  mandatory restitution.  There is a forfeiture provision that

20  the Court can order forfeiture.  Do you understand all those

21  things?

22       THE DEFENDANT:  Yes, Your Honor.

23       THE COURT:  You have indicated that you do, and you

24  have indicated that your questions have been asked and

25  answered; is that correct?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Provision 6 of your plea agreement then

3    talks about your 11(c)(1)(C).  We have just had a long

4    discussion about your 11(c)(1)(C), a little more extensive

5    than normal 11(c)(1)(C)s, but you do indicate that you fully

6    understand that in that 11(c)(1)(C) what you've agreed upon

7    and the range in which you and the government have agreed

8    upon, and you understand how the 11(c)(1)(C) works and that if

9    the Court does refuse to accept your 11(c)(1)(C), you will

10   have the opportunity to withdraw your plea; is that correct?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Paragraph 7, or the Provision 7 does

13   talk about restitution.  You have indicated you fully

14   understand your agreement with regard to the restitution that

15   was referred to in your 11(c)(1)(C).  And there is also as

16   part of paragraph 7 an agreement by you, by entering a plea

17   pursuant to this plea agreement, that you are forfeiting a

18   number of pieces of personal property.  I believe there are 36

19   pieces of personal property, mostly computer -- computers,

20   computer components, drives, thumb drives, and you have

21   reviewed all those things?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  And you understand what you are agreeing

24   to forfeit?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  In paragraph 9 of your plea agreement,

2     Mr. Hitchings, you and the government have agreed that this

3     plea constitutes a conditional plea.  And what that means is

4     that you are reserving the right to seek appellate review of

5     the Court's previous order with regard to a motion to suppress

6     that the Court ruled upon earlier in this case.  Do you

7     understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Do you have any questions about how

10    that -- what that is and how that works?

11         THE DEFENDANT:  No, Your Honor.

12         THE COURT:  Now, with the exception of that

13    condition, under paragraph 10 of your plea agreement you are,

14    in exchange for certain concessions made by the government in

15    the plea agreement, you are waiving your right to appeal the

16    conviction and sentence imposed except for that conditional

17    plea agreement.  So if -- depending on how the Court of

18    Appeals would rule, if this is appealed with regard to that,

19    that would -- if the Court -- let's see.  If the Court of

20    Appeals denies the appeal, then you have waived your right to

21    appeal the conviction or sentence imposed by the Court.  Do

22    you understand that?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Mr. Fleisher, is that adequate?

25         MR. FLEISHER:  Yes, Your Honor, I think it is.

```
1              THE COURT:  All right.  The only other provision I
2    want to bring to your attention is that you do understand that
3    by entering a plea pursuant to this plea agreement you are
4    also agreeing or you also are indicating that you understand
5    that you will be under the Sex Offender Registration and
6    Notification Act, and as a result, you will be required to
7    abide by any and all reporting requirements or regulations
8    that are imposed by that act.  Is that -- do you understand
9    that?
10             THE DEFENDANT:  Yes, Your Honor.
11             THE COURT:  Do you have any questions about that?
12             THE DEFENDANT:  No, Your Honor.
13             THE COURT:  Counsel, is there anything else I should
14   clarify with regard to the plea agreement?
15             MR. DINGELDEIN:  Nothing from the government, Your
16   Honor.
17             MR. FLEISHER:  No, Your Honor.
18             THE COURT:  Now, Mr. Hitchings, I outlined several
19   provisions in your plea agreement.  That does not mean that
20   those provisions really are any more or less important than
21   all the provisions.  It's important that you fully understand
22   every provision in your plea agreement.  And you are
23   indicating you do; is that correct?
24             THE DEFENDANT:  Yes, Your Honor.
25             THE COURT:  And that is -- and fully understanding
```

1    the plea agreement, you are requesting the Court to accept the

2    plea agreement along with your plea to Count 3 of the

3    superseding indictment; is that correct?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Mr. Fleisher, you have gone over this

6    plea agreement, reviewed it with Mr. Hitchings, read over it

7    with him.  Do you believe he fully understands it?

8              MR. FLEISHER:  I do, Your Honor.

9              THE COURT:  All right.  And if he had questions or

10   concerns about any of the provisions -- obviously, there is a

11   number of provisions here; there is a number of different

12   areas of concern for him -- you believe that you've been able

13   to answer all his questions?

14             MR. FLEISHER:  Yes, Your Honor, I do.

15             THE COURT:  Do you believe the plea agreement's

16   acceptable to him?

17             MR. FLEISHER:  Yes, Your Honor.

18             THE COURT:  All right.  The plea agreement's

19   acceptable to the government?

20             MR. FLEISHER:  Yes, Your Honor.

21             THE COURT:  Well, then, back to you, Mr. Hitchings.

22   You have indicated you fully understand the plea agreement and

23   all of its provisions.  You have reviewed it.  All your

24   questions have been asked and answered.  Is the plea agreement

25   acceptable to you?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  What I'd like to do then, if it has not

3     already been accomplished, I would ask that Mr. Hitchings,

4     Mr. Fleisher, as well as Mr. Dingeldein, or Ms. Mahy if that

5     was the case, sign the plea agreement at the signature lines

6     provided, date their signatures.  Then I would ask everyone to

7     initial the bottom of each of the pages.

8          MR. DINGELDEIN:  That's been accomplished, Your

9     Honor.

10          THE COURT:  We're almost done, Mr. Hitchings.

11      Has anyone promised you anything other than is contained

12     within this plea agreement in return for your plea?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  Has anyone done or said anything that's

15     given you some impression that something's going to happen or

16     not going to happen in return for your plea that's not in the

17     plea agreement?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  Is there anyone, Mr. Hitchings, forcing

20     you to do this?  Is there anyone threatening you, compelling

21     you against your will?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  This is something that you've thought

24     about long and hard, you have discussed with Mr. Fleisher, you

25     have weighed all your different options, and this is how

```
1    you've decided that you wish to proceed; is that correct?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And that decision on your part was a

4    totally voluntary decision; is that correct?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Have you had any kind of drugs, alcohol,

7    or medication within the last 24 hours?

8              THE DEFENDANT:  No, Your Honor.

9              THE COURT:  Clear-headed here this afternoon and

10   fully understand everything that's been said and done?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Mr. Hitchings, are you entering this

13   plea to the charge because you are, in fact, guilty as

14   charged?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Mr. Fleisher, do you consider

17   Mr. Hitchings competent to enter his plea?

18             MR. FLEISHER:  I do, Your Honor.

19             THE COURT:  And you believe he understands

20   everything we have discussed?

21             MR. FLEISHER:  Yes, sir.

22             THE COURT:  Back to you then, Mr. Hitchings, one

23   final time.  Do you wish to go forward with your plea?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Do you understand the facts alleged
```

1      against you?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Mr. Hitchings, how do you wish to plead

4      to Count 3 of the superseding indictment which charges you

5      with receipt of child pornography, a violation of 18, United

6      States Code, 2252(a)(2) and (b)(1)?

7              THE DEFENDANT:  Guilty.

8              THE COURT:  Thank you.

9          Based upon my discussions with Mr. Hitchings over the

10     last 45 minutes or so, based upon his appearance and demeanor

11     here in the courtroom, the Court does make the following

12     findings:

13         The Court finds that he is in full possession of his

14     faculties and is competent to enter this plea.

15         The Court further finds that he is not under any apparent

16     influence of narcotics, hallucinogens, alcohol, or medication.

17         The Court finds that he understands the nature of this

18     charge to which he has pled and the penalties that are

19     provided by law.

20         The Court further finds that he understands all of his

21     constitutionally guaranteed processes and rights, the jury

22     process and all the rights contained within that process, and

23     that by entering this plea knowingly, voluntarily, and

24     intelligently, he is giving up that process and all of those

25     rights.

1    The Court further finds that he is aware of his plea

2  agreement and all of its provisions, and that those provisions

3  and that agreement are indeed acceptable to him.

4    The Court finds that based upon the attachment to the

5  plea agreement as shared with the record there is a factual

6  basis for his plea.

7    And the Court finds that Mr. Hitchings has pled guilty

8  voluntarily because, as he's indicated here upon the record,

9  he is, in fact, guilty as charged.

10    Therefore, the Court accepts the plea of guilty, and it

11  will be made a permanent part of the record in this case.

12    And based upon that plea that the Court has now accepted,

13  the Court does find this defendant, William Sidney Hitchings,

14  V, guilty of receipt of child pornography, a violation of 18,

15  United States Code, 2252(a)(2) and (b)(1), as charged in Count

16  3 of the superseding indictment.

17    Now, Mr. Hitchings, the Court has accepted your plea.  I

18  have made a finding of guilty.  And now I am going to refer

19  the matter to the probation department for what is called a

20  presentence investigation.  Please cooperate with them to the

21  extent you can.  That is a conversation you should --

22  conversation you should have with Mr. Fleisher.

23    They are going to conduct this investigation and issue a

24  report with recommendations to the Court.  You and the

25  government will receive a copy of that.  You and the

1    government will have the opportunity to respond, reply, and/or

2    object to any portion of it.

3        You and the government would also have the opportunity if

4    you desire to submit a memoranda with regard to disposition,

5    mitigation of disposition, any of the factors of sentencing.

6        If a memorandum is filed, that must be filed no later

7    than seven business days following the receipt of the final

8    report and recommendation.  If a memorandum is filed and

9    opposing counsel wishes to file a response, that must be filed

10   no later than five business days following the receipt of the

11   original memoranda.

12       The Court is going to set your disposition,

13   Mr. Hitchings, for Friday, November the 18th, at 9:30.

14       Mr. Hitchings, do you have any questions about anything

15   that I have said or done here this afternoon?

16             THE DEFENDANT:  No, Your Honor.

17             THE COURT:  Mr. Fleisher, anything?

18             MR. FLEISHER:  No, Your Honor.  Thank you.

19             THE COURT:  Mr. Dingeldein, anything?

20             MR. DINGELDEIN:  No, Your Honor.

21             THE COURT:  I will see you back here then,

22   Mr. Hitchings, on November the 18th at 9:30.  Please talk with

23   Mr. Fleisher about your cooperation with probation.  Thank you

24   very much.

25             THE COURTROOM DEPUTY:  All rise.  This Court stands

1    in recess.

2         (Proceedings concluded at 2:38 p.m.)

3                    ***   ***   ***   ***

4                    CERTIFICATE OF REPORTER

5

6         I, Mary A. Schweinhagen, Federal Official Realtime

7    Court Reporter, in and for the United States District Court

8    for the Southern District of Ohio, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is

13   in conformance with the regulations of the Judicial Conference

14   of the United States.

15

16   s/Mary A. Schweinhagen

17   _____ 26th of June, 2023

18   MARY A. SCHWEINHAGEN, RDR, CRR
     FEDERAL OFFICIAL COURT REPORTER
19

20

21

22

23

24

25